IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JASON HARGIS,                        )
                                 )
      Plaintiff,              )
                                 )     NO. 3:22-cv-00087
v.                            )     JUDGE RICHARDSON
                                 )
VULCAN CONSTRUCTION      )
MATERIALS, LLC,            )
                                 )
      Defendant.           )

## MEMORANDUM OPINION

In this action, Plaintiff Jason Hargis asserts multiple state-law employment related claims against Defendant, Vulcan Construction Materials, LLC. (Doc. No. 1-1, "Complaint"). The Complaint was originally filed in the Circuit Court for Wilson County, Tennessee, and this action was then removed by Defendant to this Court. (Doc. Nos. 1, 1-1).[1] In the Complaint, which was never amended, Plaintiff asserts a claim for retaliatory discharge in violation of the Tennessee Workers Compensation Law ("TWCL," Tenn. Code Ann. § 50-6-101 *et seq.*), and a claim for discriminatory discharge in violation of the Tennessee Disability Act ("TDA," Tenn. Code Ann. § 8-50-104 *et seq.*). He also appears, at first glance (but only at first glance), to bring a claim for retaliatory discharge in violation of the Tennessee Public Protection Act ("TPPA," Tenn. Code Ann. §50-1-304) and a claim for retaliatory discharge in violation of the TDA.

---

[1] The Court initially questioned whether it had subject-matter jurisdiction, because it was lacking the required information about the membership of Defendant, which is an LLC and thus is a citizen (domicile) of each state of which any of its members is a citizen. So the Court required Defendant to provide information that would establish the citizenship of all members of Defendant. (Doc. No. 30). Defendant did so. (Doc. No. 31). Having reviewed the information provided by Defendant, the Court is satisfied that it has subject-matter jurisdiction based on the diversity of the citizenship of the parties.

Pending before the Court is Defendant's motion for summary judgment (Doc. No. 21, "Motion"), supported by an accompanying Memorandum of Law (Doc. No. 22, "Memorandum"). Plaintiff has filed a response in opposition to the Motion (Doc. No. 25, "Response to Motion"), to which Defendant has filed a reply (Doc. No. 28, "Reply").

<u>UNDISPUTED FACTUAL BACKGROUND</u>

Plaintiff helpfully sets out the following broad overview of the factual background of this case, which the Court finds to be undisputed:

> Hargis worked for Vulcan, a large multi-state producer of concrete, crushed stone, sand and gravel. He was hired to work at Defendant's Wilson County quarry in August 2018. During the latter part of 2020 until the time when he was ultimately terminated, Hargis worked as a plant operator. As a plant operator, he controlled the operation of the plant, which essentially was the crushing machine. He was admittedly responsible for cleaning and maintaining the area assigned to him under the company's policy. He was written up by a prior supervisor, Kyle Parr, in December of 2020, for failing to clean his area.

> In February 2021 Hargis was suspended and written up for leaving work early. Because of his write-up, Hargis was placed in the final stage of the company's progressive disciplinary program whereby one more write-up would result in his termination.

> Further, on May 11, 2021, a decision was made by management to terminate Hargis because he had not performed his cleaning and greasing duties from May 4 to May 10 and he was terminated on May 12, 2021.

(Doc. No. 25-1 at 2). Plaintiff disputes that the decision to terminate him was actually due to his not performing his cleaning and greasing duties. The Complaint appears to allege[2] that the decision to terminate him was: (i) retaliatory in that it was due to his engaging in conduct protected by the TPPA, the TWCL, and the TDA; and (ii) discriminatory in violation of the TDA in that it was due

---

[2] Appearances can be deceiving, however. As discussed below, Plaintiff now disavows having ever brought a claim of retaliation in violation of the TPPA. And as for the claim of retaliation in violation of the TDA, neither side addresses it in their filings made in connection with the Motion, and it is clear that what Plaintiff has styled as a claim of retaliatory discharge under the TDA does not fit that description at all.

to his having a disability resulting from a back injury he sustained while on the job during his employment with Defendant.

<u>ADDITIONAL UNDISPUTED FACTS</u>

Naturally, the ability of Plaintiff's claims to survive the Motion turns largely on what facts (beyond the basic undisputed facts set forth above) the Court should and should not treat as not in genuine dispute (and thus effectively established for purposes of the Motion). And the question of whether particular facts should be treated as established for purposes of the Motion is especially prominent here. In particular, the parties dispute whether the nine statements in "Defendant's Statement of Undisputed Material Facts in Support of Motion for Summary Judgment" (Doc. No. 23, "Statement of Facts") should be deemed admitted by Plaintiff. Those statements, and Defendant's citations in support of them, in their entirety are as follows:

1.  As a plant operator, Plaintiff was responsible for cleaning his work area and greasing equipment. (Contested Case Hearing Transcript at p. 400).

2. As a plant operator, Plaintiff was required to grease equipment on a daily basis. (Contested Case Hearing Transcript at p. 415).

3. In February 2021, Plaintiff received a final written warning from Defendant stating that "Should you engage in any act of misconduct, inappropriate behavior or demonstrate problem performance of any kind over the period of the next 12 months (from the date below), your employment will be terminated immediately." (Plaintiff's Disciplinary History).

4. Plaintiff neither cleaned his work area nor performed the required greasing on May 10 and May 11, 2021. (Contested Case Hearing Transcript at p. 422).

5. Defendant made the decision to terminate Plaintiff's employment prior to Plaintiff requesting to see a doctor the morning of May 12. (*See* Deposition of Phillip Ellis, p. 43-44).

6. Dr. Elalaydi did not prescribe Plaintiff medication for his back, nor did he place him on any restrictions, or limit his activities in any way. (Deposition of Plaintiff, p. 236-237).

7. On May 4, Plaintiff was not able to perform his normal job duties as plant operator. (Plaintiff's Dep. p. 211).

8. After April 12, but prior to his termination, Plaintiff was not able to perform the essential functions of his employment position without accommodation. (*See* Plaintiff's Complaint ¶¶ 31 and 40).

9. Plaintiff did not file a claim for workers' compensation prior to Defendant terminating his employment. (*See* Deposition of Phillip Ellis p. 64).

(Doc. No. 23 at 1-3).

Plaintiff's response to each of these statements, as set forth in "Plaintiff's Response to Defendant's Statement of Undisputed Material Facts in Support of Motion for Summary Judgment" (Doc. No. 25-3, "Response to Statement of Facts"), was in its entirety as follows:

RESPONSE: Plaintiff objects to this statement as the evidence cited does not meet the requirements of Fed. R. Civ. P. 32(a)(8) and therefore is inadmissible.

Not in any way waiving this objection, Plaintiff would admit this statement.

(Doc. No. 25-3 at 1-4). Then, in his Response to Motion, Plaintiff argues that "Defendant's use of previous deposition testimony [including, presumably, its use in support of the respective statements] does not meet the requirements of the Federal Rules Civil Procedure 32(a)(8)," which

relates to the requirements for admissibility at trial of deposition testimony taken in an earlier action. (Doc. No. 25-1 at 3-4). Plaintiff asserts that this deposition testimony should not be usable by Defendant on the instant Motion, but Plaintiff does not actually argue from this that the nine statements should not be treated as undisputed. Indeed, Plaintiff does not assert, let alone provide a basis to assert, that the nine statements should not be treated as undisputed.

In reply to Plaintiff's Response to Motion, Defendant argues that Plaintiff's objection is off-base, in part because Rule 32, on which Plaintiff relies, "governs the admissibility of deposition testimony at a hearing or trial (not in support of a motion for summary judgment)" and that "under Rule 56 [which according to defendant governs here to the exclusion of Rule 32], evidence sufficient to support a motion for summary judgment [must] be taken under oath and based upon personal knowledge. Nothing more." (Doc. No. 28 at 2). Defendant also argues that the objection is off base additionally because it supported only four of the nine statements with deposition testimony. (*Id.* at 2, 4).

The real issue here is not whether the deposition testimony is admissible on the instant Motion, such that defendant properly can rely on it. Instead, the real issue is whether the nine statements should be treated as undisputed; if so, then (as becomes apparent below) there is simply no reason for the Court to look at anything else besides the nine statements, and in particular no reason to look separately at any deposition testimony—including the portions of the deposition testimony used to support the nine statements.

The Court resolves the issue in a manner not contemplated by either party (and especially not by Plaintiff, who did not even acknowledge the real issue), namely via reference to this Court's local rules and basic principles regarding what summary judgment procedure is intended to accomplish. According to the Local Rules:

> (c) Response to Statement of Facts. Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either:
>
> (1) Agreeing that the fact is undisputed;
> (2) Agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or
> (3) Demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record.

L.R. 56.01(c)(1)-(3). To the extent that Plaintiff chose one of these three options, Plaintiff chose the first; Plaintiff agreed that the fact was undisputed. As Plaintiff did not purport to limit such agreement to the summary judgment context, he did not choose the second option. And Plaintiff certainly did not choose the third option; he did not demonstrate (or even contend) that any of these facts were disputed, but instead admitted that they were true. So to the extent that Plaintiff did something authorized or contemplated by the Local Rules, what Plaintiff did was agree that the purported facts were undisputed.

What the Local Rules do *not* authorize or contemplate is a non-movant agreeing that a fact is undisputed but asserting essentially that fact should be treated as disputed anyway because the movant has cited something that (according to the non-movant) should not be cited to show the lack of dispute for purposes of a summary-judgment motion. It does not appear that Plaintiff was even attempting to do such a thing; as noted above, in his Response to Motion, he did not actually do anything to deny that the nine statements were all true. But any such attempt would have been inconsistent with the Local Rules, which simply do not give the non-movant the option to admit that a purported fact is undisputed and yet effectively negate such admission based on an objection to the movant's reliance on particular materials to show that such fact is not genuinely in dispute.

Nor *should* the Local Rules contemplate any such thing. The summary judgment procedure is intended, in substantial part, to identify what facts are and are not in genuine dispute. If a non-movant admits that a fact (as purported by the movant) is true, then the analysis (of whether the

movant is entitled to judgment as a matter of law) proceeds as if the fact is true, irrespective of whether the movant relied on material that the Court would have needed to disregard in determining whether there was a genuine dispute as to that fact *if* hypothetically the non-movant had disputed that fact. This process obviously promotes efficiency; if the non-movant admits that a fact is true, it is woefully inefficient for a busy district court to spend its time getting into the nuances of whether the movant cited competent material in order to show that particular facts—which have been revealed by the non-movant's admission to be not in dispute—are not in dispute.

If (as does not appear to be the case), Plaintiff actually is now disputing the nine statements, his position essentially must be, "I admit that these facts are true, but we should ignore that both parties agree that these facts are true because Defendant, in support of the undisputed proposition that these facts are true, has cited evidence that (although supporting the truth of these facts) is not proper to consider on a motion for summary judgment." The Court will not countenance this approach. Plaintiff has admitted that these facts are undisputed, has not done anything to recant those admissions or claim that the facts are in dispute, and has not explained why his objection to the citation of materials—materials that plainly that support the truth of these facts—has the effect of somehow nullifying those admissions. In short, Plaintiff effectively chose one of the three options from which, under the Local Rules, he was obligated to choose. In particular, he chose to admit that Defendant's purported facts are true, and he has not even attempted to deny that they are and remain undisputed. So these facts are not in dispute, and they do not become disputed merely because Plaintiff, while admitting that the facts are true, raises some technical challenge to the citations by which Defendant supported their truth.

Accordingly, the Court's analysis proceeds with each of the aforementioned nine facts being treated as true. Conversely, the Court does not rely independently on the underlying

deposition testimony, and so it need not decide whether to sustain Plaintiff's objection to the independent use of that deposition testimony.

<u>SUMMARY JUDGMENT STANDARDS</u>

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56€. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). In other words, even if genuine, a factual dispute that is irrelevant under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Reeves v. Swift Transp. Co.*, 446 F.3d 637, 640 (6th Cir. 2006) (citing *Anderson*, 477 U.S. at 248), *abrogated on other grounds by Young v. United Parcel Serv.*, 575 U.S. 206 (2015). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018). The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Alternatively, the moving party may meet its initial burden by otherwise "show[ing]"—even without citing materials of record—that the nonmovant "cannot produce admissible evidence to support the [existence of a] material fact," Fed. R. Civ. P. 56(c)(1)(B), for example, the existence of an element of a nonmovant

plaintiff's claim. If the summary judgment movant meets its initial burden, then in response the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Pittman*, 901 F.3d at 628 (quoting *Anderson*, 477 U.S. at 250).[3] Importantly, "[s]ummary judgment for a defendant [that has met its initial burden as the movant] is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial.'" *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 805–06 (1999) (quoting *Celotex,* 477 U.S. at 322).

Any party asserting that a fact cannot be or genuinely is disputed (i.e., any party seeking summary judgment and any party opposing summary judgment, respectively) can support the assertion either by: (a) citing to materials in the record, including, but not limited to, depositions, documents, affidavits, or declarations, Fed. R. Civ. P. 56(c)(1)(A), or (b) "showing" (i) that the adverse party cannot produce admissible evidence to raise a genuine dispute as to that fact or (ii) that contrary to the claim of the adverse party, the materials cited by the adverse party do not actually establish the absence or presence (as the case may be) of a genuine dispute as to that fact. Fed. R. Civ. P. 56(c)(1)(B).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (citing *Anderson*, 477 U.S. at 248). Likewise, the "court should view the facts and draw all reasonable inferences in favor of the non-moving party." *Pittman*, 901 F.3d at 628 (citing *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact,

---

[3] Courts (appropriately) at times refer interchangeably to a party being able to raise a genuine issue as to a fact and a reasonable jury being able to find in the party's favor on that fact, and this Court does likewise.

summary judgment is not appropriate. *Id*. The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the non-moving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

A defendant-movant cannot meet its initial burden on motion for summary judgment merely by *claiming* that the plaintiff lacks evidence and essentially challenging the plaintiff to show otherwise; a defendant-movant must—by pointing to materials of record or otherwise—*show* (presumptively, subject to the plaintiff's response) that the plaintiff could not prove his claim by a preponderance. *See* Fed. R. Civ. P. 56(c)(1).[4] In other words, the defendant-movant must produce evidence *tending to show* (though not necessarily *conclusively showing*) that the plaintiff cannot raise a genuine issue as to any material fact.[5] *Nickols v. Morris*, 705 F. Supp. 2d 579, 584–85 (N.D. Tex. 2010) ("The party moving for summary judgment has the initial burden of informing the Court of the basis for his motion and producing evidence which tends to show that no genuine

---

[4] The undersigned rejects cases that have indicated otherwise. *See, e.g.*, *O.M.A., S.r.l. v. Simon DeYoung Corp.*, No. 1:10-CV-0861, 2013 WL 7210503, at *3 (N.D. Ohio Mar. 12, 2013) ("[A summary judgment] movant in federal court is not required to . . . provide evidence to show that his opponent has no evidence"), *R&R adopted in part, rejected in part on other grounds*, No. 1:10 CV 00861, 2014 WL 587171 (N.D. Ohio Feb. 14, 2014); *Goldcorp, Inc. v. United States*, No. 00-75043, 2002 WL 551042, at *6 (E.D. Mich. Mar. 27, 2002) ("At any rate, even if [the] affidavit were altogether stricken from the record, it appears that the Government still would be entitled to summary judgment in its favor. After all, this affidavit has been provided merely to prove a negative: namely, that there is no evidence that the IRS ever received the protective claim allegedly sent by Plaintiff on or before September 15, 1995. Presumably, then, the Government could have simply asserted this proposition in its brief, and left it to Plaintiff to introduce evidence calling this issue into question.").

[5] Notably, a defendant-movant typically can show that there is no genuine issue as to any material fact by showing that there is no genuine issue as to the existence of a fact (usually, the element of a claim) that absolutely needs to exist for the plaintiff to prevail. If the defendant-movant can make this showing, all other facts become immaterial (because the plaintiff necessarily will suffer summary judgment anyway), and thus it can be said that the plaintiff (being unable to show a genuine issue as to *one* material fact) cannot raise a genuine issue as to *any* material fact.

issue as to any material fact exists and that he is entitled to judgment as a matter of law."), *aff'd*, 419 F. App'x 534 (5th Cir. 2011).

On a motion for summary judgment, a party may object that the supporting materials specified by its opponent "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Upon such an objection, the proponent of the supporting material must show that the material is admissible as presented or explain how it could be presented in a form that would be admissible. *Thomas v. Haslam*, 303 F. Supp. 3d 585, 624 (M.D. Tenn. 2018); *Mangum v. Repp*, 674 F. App'x 531, 537 (6th Cir. 2017) (citing Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment).

The Court will take a moment here to discuss the so-called *McDonnell Douglas* standard and its applicability to motions for summary judgment in the context of employment-discrimination and retaliation claims in the federal judicial system. The Sixth Circuit has summarized the applicability and workings of the *McDonnell Douglas* burden-shifting framework (in a case that happened to involve Title VII discrimination claims in particular) as follows:

> A plaintiff may show discrimination by direct evidence, or a plaintiff lacking direct evidence of discrimination may succeed on a Title VII claim by presenting indirect evidence under the framework first set forth in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802–03, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973).
>
> To succeed under the *McDonnell Douglas* framework, the plaintiff must first make out a *prima facie* case of discrimination by a preponderance of the evidence. . . . Once the plaintiff makes out a *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for" the adverse employment action. Should the defendant do so, the plaintiff then must prove by a preponderance of the evidence that the stated reasons were a pretext for discrimination.

*Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606–07 (6th Cir. 2019) (citations omitted).

The burden-shifting approach in *McDonnell Douglas* applies only to discrimination or retaliation claims premised on so-called indirect (*i.e.*, circumstantial) evidence.[6] *Id.* The undersigned has recently explained:

> When a defendant-movant challenges a plaintiff's ability to reach a jury on an indirect-evidence theory of employment discrimination, there are a number of steps potentially implicated, though not all of them necessarily need be addressed in the analysis. The number of steps to be addressed depends on whether the defendant-movant seeks to prevail at the first step, or at the second and third step, or at both the first step and the second and third step . . .

> To prevail at the first step of *McDonnell-Douglas*, the defendant, as the summary-judgment movant, must meet its initial burden of showing an absence of evidence from which a reasonable jury could find the plaintiff established a *prima facie* case. *E.g., Banks v. State of Ohio*, No. 94–3866, 1995 WL 118993, * 2 (6th Cir. Mar. 20, 1995). If the defendant does so, then the burden shifts to the plaintiff to show that at trial it could "make out a *prima facie* case of discrimination by a preponderance of the evidence." *Redlin*, 921 F.3d at 606. If the plaintiff fails to succeed here, then the plaintiff suffers summary judgment in favor of the defendant on the claim. But if the plaintiff succeeds here, defendant does not prevail at the first step and is relegated to try instead to prevail at the second and third steps of *McDonnell-Douglas.*

> At the second step, the defendant-movant has the burden (of production only) to show a legitimate and non-discriminatory reason for its action(s). *Brown*, 814 F. App'x at 80 (noting, on the defendant's motion for summary judgment that it is a "burden of production [that potentially] shifts to the defendant to show a legitimate, nondiscriminatory reason for the way it treated the plaintiff"). If the defendant successfully shows evidence of a non-discriminatory reason for its alleged discriminatory act, the court proceeds to the third step, where "the plaintiff must rebut the proffered reason by producing evidence from a which a reasonable jury could conclude that the proffered reason is actually a pretext" for unlawful discrimination. *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 807 (6th Cir. 2020) (quotations omitted).

---

[6] "Direct evidence is such that, if true, requires the conclusion that unlawful retaliation [or discrimination] was a motivating factor without any inferences or presumptions." *Banks v. Bosch Rexroth Corp.*, 15 F. Supp. 3d 681, 693 (E.D. Ky. 2014), *aff'd*, 610 F. App'x 519 (6th Cir. 2015) (citing *Norbuta v. Loctite Corp.*, 181 F.3d 102 (6th Cir. 1999)). Indirect evidence is evidence that requires the court to make inferences to conclude that unlawful retaliation or discrimination was a motivator for an adverse employment action.

*Veith v. Tyson Fresh Meat, Inc*., No. 3:19-CV-01065, 2022 WL 1231229, at \*9-10 (M.D. Tenn. Apr. 26, 2022) (footnotes omitted). As will be further discussed below, both of the claims that Plaintiff actually asserted are subject to the *McDonnell Douglas* framework.

ANALYSIS

I.   <u>Defendant is entitled to summary judgment on Plaintiff's claim of disability discrimination in violation of the TDA.</u>

The TDA proscribes discrimination in hiring, firing, and the terms and conditions of employment by "any private employer[ ] against any applicant for employment based solely upon any physical, mental or visual disability." Tenn. Code Ann. § 8-50-103(b). The Tennessee Supreme Court has held that "an individual alleging discrimination under the [TDA] must show: (1) that the individual was qualified for the position; (2) that the individual was disabled; and (3) that the individual suffered an adverse employment action because of that disability." *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 705 (Tenn. 2000), *abrogated on other grounds by Gossett v. Tractor Supply Co.*, 320 S.W.2d 777 (6th Cir. 2010).

*Gossett* abrogated *Barnes* insofar as *Barnes* held that the burden-shifting approach of *McDonnell Douglas* was applicable at the summary-judgment stage in cases in Tennessee state court. *Gossett* made quite clear that *McDonnell Douglas* burden-shifting is inapplicable in state court at the summary-judgment stage. *Gossett*, 320 S.W.2d at 785 ("[W]e hold that the *McDonnell Douglas* framework is inapplicable at the summary judgment stage because it is incompatible with Tennessee summary judgment jurisprudence."); *Burress v. City of Franklin*, 809 F. Supp. 2d 795, 817 n.7 (M.D. Tenn. 2011) ("*Barnes* has been abrogated by *Gossett* . . . , which held that the *McDonnell Douglas* burden-shifting analysis is not applicable at the summary judgment stage 'because it is incompatible with Tennessee summary judgment jurisprudence.'" (quoting *Gossett*, 320 S.W. at 779)). Soon thereafter, *Gossett* was superseded by statute expressly with respect to

claims under the Tennessee Human Rights Act (Tenn. Code Ann. § 4-21-101 *et seq.*, "THRA") and claims under the TDA (Tenn. Code Ann. § 8-50-103). *See* Tenn. Code Ann. § 4–21–311(e); *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 758 (6th Cir. 2012) ("Shortly after oral argument, an amendment to Tenn. Code Ann. § 4–21–311(e) took effect, which appears to abrogate *Gossett* and *Hannan* and require the continued application of the *McDonnell Douglas* framework in THRA cases in accordance with the law prior to *Gossett* and *Hannan.*"). Under this post-*Gossett* statute, application of the *McDonnell Douglas* standard (although the statute meticulously avoids calling it that) is specifically required at the summary-judgment stage. Tenn. Code Ann. § 4–21–311(e).

In a non-precedential case that post-dates *Gossett*, the Sixth Circuit, relying on pre-*Gossett* case law rather than on Tenn. Code Ann. § 4–21–311(e), has held that *McDonnell Douglas* burden-shifting does apply to TDA claims in federal court at the summary-judgment stage. *See Cardenas-Meade v. Pfizer, Inc.*, 510 F. App'x 367, 369 n.2 (6th Cir. 2013). This Court has cited *Cardenas* in holding likewise. *See Litts v. Sumner Reg'l Med. Ctr., LLC*, No. 3:15-CV-133, 2016 WL 4466632, at *5 (M.D. Tenn. Aug. 24, 2016) ("Claims for discrimination on the basis of age or disability under the ADEA, ADA, TDA, and THRA that are based on indirect, or circumstantial, evidence are analyzed employing the familiar burden-shifting analysis set forth by the Supreme Court in *McDonnell Douglas*[.]"). And this Court has done so again, more recently. *See Clark v. Clarksville Hous. Auth.*, No. 3:18-CV-00678, 2020 WL 134114, at *2 (M.D. Tenn. Jan. 10, 2020).

And a recent district court opinion from the Western District of Tennessee has done likewise, this time by appropriately citing the new statute rather than relying dubiously on pre-*Gossett* case law. *Chapman v. Olymbec USA, LLC*, No. 18-CV-2842, 2023 WL 2394568, at *9 n.8 (W.D. Tenn. Mar. 7, 2023) ("Tennessee, however, has codified the *McDonnell Douglas*

framework. Tenn. Code Ann. § 4-21-311(e). The Court's burden-shifting analysis of Plaintiff's ADA claim applies equally to her TDA claim." (case citation omitted)).

Notably, even if state law did not support that result, federal law might independently support that result. That is, *if* the question of whether to apply *McDonnell Douglas* burden-shifting is procedural rather than substantive, then the question is (under the so-called *Erie* doctrine)[7] one of federal law. Whether that question is procedural is debatable. *See id.* ("Courts have disagreed about whether the *McDonnell Douglas* burden-shifting framework is procedural or substantive, and thus on whether it applies to state law discrimination claims under *Erie*."); *Burress*, 809 F. Supp. 2d at 817 n.7 ("The Court presumes without deciding that the Tennessee standard of review of summary judgment motions is procedural rather than substantive and does not bind this Court, even in diversity cases."). And if the question of whether to apply *McDonnell Douglas* to these kinds of claims is an issue of federal law, presumably the issue is resolved by applying the federally prevalent *McDonnell Douglas* framework.

Ultimately, the Court is fully satisfied that whether state law or federal law governs whether *McDonnell Douglas* burden-shifting applies in federal court to motions seeking summary judgment as to a TDA claim, the answer to the latter question is yes. So the Court treats *McDonnell Douglas* burden shifting as applicable here, given that Plaintiff does not even purport to have direct evidence of disability discrimination.

That leads to a consequential observation. As noted above, under *Barnes* a plaintiff alleging discrimination in violation of the [TDA] must show: (1) that he or she was qualified for the position; (2) that he or she was disabled; and (3) that he or she suffered an adverse employment

---

[7] "Under the *Erie* doctrine, a federal court sitting in diversity applies 'the substantive law of the forum state and federal procedural law.'" *Bonasera v. New River Elec. Corp.*, 518 F. Supp. 3d 1136, 1151 (S.D. Ohio 2021) (quoting *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009)).

action because of that disability. This Court has treated this principle of *Barnes* as good law even after *Gossett*. *See Alves v. Parallon Health Info. Sols., LLC*, No. 3:14-01962, 2016 WL 3941122, at *3 (M.D. Tenn. July 21, 2016) ("[T]here are three elements to a claim for discrimination under the TDA; a claimant must show: '(1) that the individual was qualified for the position; (2) that the individual was disabled; and (3) that the individual suffered an adverse employment action because of that disability.'" (quoting *Barnes*, 48 S.W.3d at 705)). But if, as just stated, these three things are "elements," they must be "elements" of an indirect-evidence prima facie case of discrimination, rather than "elements" in the traditional sense of being the requirements for a claim that, if satisfied, *by themselves conclusively* establish the plaintiff's right to relief on that claim (subject, perhaps to any affirmative defense). This is because, since *McDonnell Douglas* burden-shifting is required in the absence of direct evidence of discrimination, a defendant must have an opportunity to prevail at steps two and three of *McDonnell Douglas*[8]—which means that these three

---

[8] Defendant in its Memorandum does not even allude to the possibility that it might prevail on its Motion with respect to the TDA claim at steps two and three, *even if* it does not prevail by showing (in what is actually merely step one, as discussed herein) that Plaintiff lacks adequate evidence of at least one of these three elements. Indeed, in its Memorandum, Defendant does not even acknowledge the fact, or even the possibility, that *McDonnell Douglas* applies here. True, as noted in a footnote below, the Memorandum does refer briefly (though not by name) to what in actuality is step two of *McDonnell Douglas.* But the Memorandum (correctly) refers to this step (without calling it a step or referring to *McDonnell Douglas*) merely as one at which a defendant-movant "bears [some] burden"; the Memorandum does not explain that if the defendant-movant carries that burden, it does not necessarily prevail but rather merely survives till step three (at which stage it potentially still could lose), and indeed the Memorandum does not acknowledge step three at all. For these reasons, as well as additional ones reflected in a footnote below, the Memorandum cannot be taken as asserting grounds for Defendant to prevail at steps two and three (meaning, surviving step two in order to then ultimately prevail on the claims at step three).So if Defendant is to prevail on Plaintiff's TDA claim, it must do so by showing the absence of sufficient evidence of at least one of the three elements (in what is step one of *McDonnell Douglas*, even though Defendant does not acknowledge that reality).

It is true that Defendant, again without referring to *McDonnell Douglas* (or step three thereof) by name, makes an argument *in its Reply* about Plaintiff being unable to show that Defendant's proffered legitimate, non-discriminatory reason is in fact pretextual. But in the Court's view, this is too late; Plaintiff had already filed its Response to Motion by then, and Plaintiff was not required therein to counter any argument that Defendant survives step two so as to reach step three and then prevails at step three, because Defendant had not made such arguments in its Memorandum. The proper purpose of Plaintiff's Response to Motion was to refute (including via argument and, to the extent necessary or at least helpful, the presentation of relevant

requirements cannot be "elements" in the traditional sense. Presumably, since every indirect-evidence prima facie case of discrimination has elements, the three "elements" here are the elements of an indirect-evidence prima facie case of discrimination under the TDA.

But whether this is true, or whether instead they are elements in the traditional sense, Defendant is correct that a plaintiff (at least one, like Plaintiff, who lacks direct evidence of disability discrimination) must show all three of them in order to prevail. (Doc. No. 22 at 9).[9] Defendant challenges Plaintiff with respect to only the first of the three elements, arguing that Plaintiff was not qualified for his position at the time that he was terminated. Defendant correctly notes:

> To be qualified under the TDA, a plaintiff must "(1) possess the requisite skill, education, experience, and training for the position, and (2) be able to perform the essential job functions." *Black v. City of Clarksville*, No. M202001580COAR3CV, 2022 WL 122615, at *5 (Tenn. Ct. App. Jan. 13, 2022). Unlike the ADA, the TDA does not have a "reasonable accommodation" component, meaning, "[i]f a claimant needs an accommodation to be capable of performing the essential functions of the position, the claimant is not considered to be qualified for the job and may not look to the TDA for protection." *Id.*

(Doc. No. 22 at 10).

It is undisputed that as of the time of his termination, Plaintiff was not "qualified" for his position as thus defined. As discussed above, Plaintiff has admitted (subject to an objection that

---

evidence), Defendant's arguments *in the Memorandum* as to why Defendant should prevail. And in turn, the proper purpose of Defendant's Reply was to show the unpersuasiveness of Plaintiff's Response to Motion—something that is not accomplished by presenting arguments that Plaintiff was not obligated to refute because they were not made in the Memorandum.

All of this highlights the need for a litigant in these kinds of cases to point out the applicability of *McDonnell Douglas* where appropriate, conduct an appropriate analysis under the *McDonnell Douglas* framework, tie all arguments to particular parts of that analysis, and not conflate one part of the analysis for another part of the analysis. And it also highlights the need, for a defendant-movant in particular, to set forth clearly and fully its theory (for why it is entitled to summary judgment) *in its opening brief*, and not wait until the reply to clarify or add to its theory.

[9] At this part of its brief, Defendant clearly meant to cite *Bennett v. Nissan N. Am., Inc.*, 315 S.W.3d 832, 841 (Tenn. Ct. App. 2009), but, alas, cited a non-existent case, apparently due to a scrivener's error.

does not serve in any way to negate the admission) the nine facts as stated by Defendant. One of those facts, No. 8, is that "[a]fter April 12, but prior to his termination, Plaintiff was not able to perform the essential functions of his employment position without accommodation." (Doc. No. 23 at 3; Doc. No. 25-3 at 3). And indeed, as discussed below, Plaintiff himself states that "he was terminated because he was unable to perform the job" and that "as a result of his April 10, 2021 injury, [he] became disabled in that he was unable to perform the duties required and his job and was due to his injury, he was impaired from the performance of his work." (Doc. No. 25-1 at 11). Although Plaintiff perhaps does not realize it, this is tantamount to admitting that he is unable to satisfy the elements of this claim because he was not qualified for the job at the time of his termination—and indeed it makes the Court wonder why Plaintiff ever contended that this claim was valid. With this fact not in genuine dispute, there is no question that Plaintiff cannot establish the first element (being qualified for the position) as required for discrimination in violation of the TDA, and therefore it is readily apparent that Defendant is entitled to judgment as a matter of law on this claim.

II.      <u>Defendant is entitled to summary judgment on Plaintiff's claim of TWCL retaliation.</u>

As the undersigned previously has noted:

> [F]ederal courts evaluating TWC[L] retaliatory discharge claims premised on indirect-evidence and governed by Tennessee law should "use the same burden-shifting framework" as outlined in *McDonnell Douglas. See Alexander v. Kellogg USA, Inc.*, 674 F. App'x 496, 501 (6th Cir. 2017) (citing *Smith v. Bridgestone/Firestone, Inc.*, 2 S.W.3d 197, 200 (Tenn. Ct. App. 1999)); *see also Moling v. O'Reilly Auto., Inc.*, 763 F. Supp. 2d 956, 978 (W.D. Tenn. 2011) (holding that *McDonnell Douglas* is the appropriate standard by which a federal court should evaluate a Tennessee state-law employment retaliation claim). As Plaintiff does not purport to have direct evidence of retaliatory discharge, his claims will be assessed under the indirect-evidence framework of *McDonnell Douglas.*

*Earheart v. Cent. Transp. LLC*, No. 3:19-CV-01107, 2022 WL 1445220, at *9 (M.D. Tenn. May

6, 2022), *appeal dismissed*, No. 22-5478, 2022 WL 4004150 (6th Cir. Aug. 24, 2022) (footnote omitted). As Defendant notes, (Doc. No. 22 at 6-7), *Earheart* also sets forth the elements of an indirect-evidence prima facie case of retaliation under the TWCL:

> To establish a prima facie case for workers' compensation retaliation, the employee must show 1) he was an employee of the employer at the time of the injury, 2) the employee filed a workers' compensation claim against the employer, 3) the employer terminated the employee, and 4) the workers' compensation claim played a substantial role in the employer's decision to terminate the employee.

*Id.* at *10 (quoting *Alexander*, 674 F. App'x at 501). Defendant contests Plaintiff's ability to establish the second and fourth, though not the first and third, of these elements. (Doc. No. 22 at 7). As to the second element, Defendant argues only that "Plaintiff did not file a claim for worker's compensation prior to Defendant terminating his employment. Instead, Plaintiff merely requested to see a doctor and nothing more." (*Id.*) (citation omitted). This argument is plainly premised on the notion that the element can be satisfied only by the actual filing of a formal workers' compensation claim prior to the plaintiff's termination (something that undisputedly did not happen here), and Defendant insists on the correctness of this notion. (Doc. No. 28 at 6-7 n.3) ("[I]n response to Defendant's ninth statement, Plaintiff admits he did not file a claim for workers' compensation prior to Defendant terminating his employment. (Doc. 25-3, ¶ 9). Furthermore, Plaintiff neither cites to caselaw nor to any provision of the [TWCL] expressly supporting his position that a request to see a doctor is the same as filing a claim for workers' compensation.").

The problem for Defendant, though, is that the undersigned (on his own) has found a good deal of case law suggesting that the actual filing of a formal claim for workers' compensation benefits is not required and that at least under certain circumstances a request to see a doctor could suffice. For example, in *Woodard v. Morgan Tire & Auto, Inc.*, No. 3:05-0681, 2006 WL 2850323 (M.D. Tenn. Oct. 2, 2006), the Court stated:

Contrary to [the defendant's] suggestion, the fact that [the p]laintiff had not filed a workers' compensation claim or sought assistance from the Department of Labor prior to his termination is not fatal. A jury could conclude that [the defendant] was very well aware of the real possibility that Plaintiff would be pursuing such a claim because he spoke with Murphy [the plaintiff's manager] about worker's compensation and Murphy passed those conversations on to both Area Manager Gillespie and Risk Manager Kempsell.

Tennessee courts do "not define the exact steps an employee must take in order to be deemed to have 'sought workers' compensation benefits' for purposes of a retaliatory discharge action" because in doing so an employer "might be tempted to evade the law by obstructive tactics or by discharging h[im] before [ ]he can take any specific steps." *Elliott v. Blakeford at Green Hills*, 2000 WL 1817228 at *4 (Tenn. Ct. App. 2000). One step which is not essential to pursuing a retaliatory discharge claim is that an actual claim already be filed since Tennessee law places an affirmative duty on the employer with knowledge of a possible compensatory injury to furnish necessary treatment, free of charge. *Id.* citing, Tenn. Code Ann. § 50-6-204(a)(1).

A reasonable jury could readily conclude in this case that the employer was aware of a compensable injury given Murphy's inquiry about worker's compensation benefits to Gillespie and to someone in corporate whom he believed to be Kempsell within days of the accident.

*Id.* at * 6 (some brackets in original). Many other cases are to like effect. *See, e.g., Morgan v. HTH Companies, Inc.*, No. 3:10-cv-411, 2011 WL 5967275, *5 (E.D. Tenn. Nov. 29, 2011) "Tennessee Court of Appeals has stated that the second requirement of the prima facie case, the requirement that an employee make a claim against the employer for benefits, was intended to be 'flexible' and that Tennessee courts do 'not define the exact steps an employee must take in order to be deemed to have "sought workers' compensation benefits" for purposes of a retaliatory discharge action' because in doing so an employer 'might be tempted to evade the law by obstructive tactics or by discharging [the employee] before [he] can take any specific steps.'" (quoting *Elliott v. Blakeford at Green Hills*, No. M2000–00365–COA–R3–CV, 2000 WL 1817228, at *4 (Tenn. Ct. App. Dec.13, 2000)); *Whirlpool Corp. v. Pratt,* 2008 WL 4615709, *5 (Tenn. Ct. App. Oct. 17, 2008) ("We have concluded that [the plaintiff]'s actions in this case were sufficient to make a claim for

workers' compensation benefits for purposes of her retaliatory discharge claim. [The defendant] knew that [the plaintiff] had been injured at work, and the trial court found that she inquired about workers' compensation coverage prior to her termination." (footnote omitted)); *Cassidy v. Spectrum Rents*, No. 3:96-cv-41, 1996 WL 870744, *5-6 (E.D. Tenn. Nov. 15, 1996)*.

Manifestly, none of those cases (or other cases the undersigned found) are binding on this Court, and none are from the Tennessee Supreme Court. Under the *Erie* doctrine,[10] the Court's job is to forecast what the Tennessee Supreme Court would say if confronted today with the relevant issue: whether (as Defendant claims) the second element of a claim of retaliation in violation of the TWCL requires the actual filing of a formal workers' compensation claim, or instead whether (as Plaintiff effectively claims) the element could be satisfied if relevant employees of the defendant knew plaintiff had sustained an injury potential compensatory under the TWCL and/or had requested a doctor for such inquiry. The Court is confident that, as discussed in the above-cited (and other) cases, the Tennessee Supreme Court would reject Defendant's position and adopt

---

[10] The Sixth Circuit has explained:

> In diversity cases such as this, [the *Erie* doctrine requires that] we apply state law in accordance with the controlling decisions of the state supreme court. If the state supreme court has not yet addressed the issue presented, we must predict how the court would rule by looking to all the available data. *See id.* "Relevant data include decisions of the state appellate courts, and those decisions should not be disregarded unless we are presented with persuasive data that the [state] Supreme Court would decide otherwise." *Kingsley Assoc. v. Moll PlastiCrafters, Inc.,* 65 F.3d 498, 507 (6th Cir.1995).

*Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001) (citations and footnote omitted). Herein, the Court concludes that the relevant data supports its view as to how the Tennessee Supreme Court would rule on the above-referenced question here at issue. Relatedly, the Court is confident that when it cites herein to the Tennessee Court of Appeals, the cited material accurately reflects Tennessee law as the Tennessee Supreme Court would view it today.

Plaintiff's position. Accordingly, the Court finds that Defendant has not met its initial burden to show preliminarily that Plaintiff could not reach a jury as to the second element.[11]

That leaves Defendant's assertion that Plaintiff cannot reach a jury on the fourth element, i.e., that the workers' compensation claim played a substantial role in the employer's decision to terminate the employee. The first argument in support of that assertion is that there was no workers' compensation claim at all (and thus necessarily no workers' compensation that played a substantial role in Plaintiff's termination). (Doc. No. 22 at 7). That argument is a non-starter, though, because as discussed above a jury could find that Plaintiff made what amounts to a workers' compensation claim for purposes of the elements of a TWCL retaliation claim. The second, alternative argument in support of that assertion is that Defendant terminated Plaintiff's employment for a legitimate, non-discriminatory reason.[12] Although Defendant does not quite spell this out, the idea seems to be that Defendant terminated Plaintiff *based solely* on a legitimate, non-discriminatory reason,

---

[11] Below, when the Court refers to Plaintiff making, or allegedly making, a "workers' compensation claim," it is referring to this broader notion of making a claim, and not solely to the narrower notion of actually filing a formal claim.

[12] The term "legitimate, non-discriminatory reason" harkens back to step two of *McDonnell Douglas* and thus might fool the reader into thinking that Defendant here was making an argument specifically that it satisfied step two of *McDonnell Douglas* (assuming that Plaintiff got that far). But (as alluded to in a footnote above), that cannot be the case, because the Memorandum does not even mention *McDonnell Douglas* at all, let alone set forth a multi-step burden-shifting analysis as contemplated by *McDonnell Douglas*. Thus, as also alluded to in the footnote above, the Court is constrained to treat Defendant's argument as going to the fourth of the elements of a claim of TWCL retaliation (elements that are implicated at what is step one of the *McDonnell Douglas* analysis). This treatment is firmly supported by Defendant's caption of this section of its brief, which asserts that "Plaintiff's claim for retaliatory discharge under the TWC[L] should be dismissed because Plaintiff did not file a claim for workers' compensation benefits prior to his termination and *Plaintiff's request to see a doctor did not play a substantial role in Defendant's decision to terminate his employment*." (Doc. No. 22 at 6) (emphasis added).

It is true that, citing *Earheart*, the Memorandum does refer briefly to the "legitimate, non-discriminatory reason" analysis as a step that is reached only if the plaintiff can establish a prima facie case. (Doc. No. 22 at 7). But this reference in unmoored to—and fails even to suggest the existence of—a true *McDonnell Douglas* analysis, because it is not followed by any reference to step three of *McDonnell Douglas* (a step to which Defendant never refers). Defendant's only allusion to that step is made only in the Reply—which is too late, as noted above—wherein (again without referring to *McDonnell Douglas*) Defendant asserts that it alternatively can prevail on the grounds that Plaintiff cannot show that Defendant's proffered reason for the termination is pretextual. (Doc. No. 28 at 8).

meaning that it cannot be said that Plaintiff's workers' compensation claim (assuming that there was one) played a substantial role in Defendant's decision to terminate the employee.

Defendant relies on the fact that its decision to terminate Plaintiff's employment was made prior to Plaintiff's request to see a doctor on the morning of May 12, which was the date of his termination. (Doc. No. 22 at 8). From this fact, Defendant asserts that "Plaintiff's request to see a doctor did not play a causal role in Defendant's decision to terminate his employment because that decision had already been made." (*Id.*). The quoted assertion is fair, to the extent that it is referring to Plaintiff's request to see a doctor *on the morning of May 12*. But it is unfair to the extent that it is referring to Plaintiff's *prior* requests to see a doctor; the record is replete with evidence that Plaintiff made such prior requests, and the Court does not see that there is any dispute that this in fact occurred. It certainly helps Defendant that the decision to terminate Plaintiff had been made before the *May 12* request to see a doctor, but the Court keeps in mind that Plaintiff's prior requests to see a doctor conceivably could help (even though it turns out that they ultimately do not avail) Plaintiff in the analysis.

Beyond the above-stated assertion, the Memorandum's argument on the fourth element is as follows:

> Defendant terminated Plaintiff's employment for a legitimate, non-discriminatory reason. Here, there is no dispute that Plaintiff was at the final stage of the Defendant's progressive disciplinary scheme and failed to complete his required cleaning and greasing on May 10 and May 11. (Plaintiff's Contested Case Hearing Testimony, p. 422; l. 13- 22). (*See also id.* at p. 435; l. 5-8). In February 2021, when Defendant issued Plaintiff a final written warning and suspension, it placed him on notice that "should [he] engage in any act of misconduct, inappropriate behavior or demonstrate problem performance of any kind over the period of the next 12 months…[his] employment [would] be terminated [.]" By failing to complete his required duties, Plaintiff engaged in unsatisfactory performance and his employment was therefore terminated.

(*Id*. at 7-8).

The Court concludes that the facts on which Defendant relies are not subject to genuine (or even any) dispute. In particular, they are reflected in Statement Nos. 1 through 4 (and especially Nos. 3 and 4) in Defendant's Statement of Facts, which as noted above are undisputed. And these facts by themselves are sufficient to enable Defendant to meet its burden as the defendant-movant—the burden to show preliminarily (subject to Plaintiff's prerogative to show otherwise) that Plaintiff would be unable to adduce sufficient evidence for a jury to find that his workers' compensation claim (assuming that he made one, as a jury potentially could find, as discussed above) played a substantial role in Defendant's decision to terminate his employment. Specifically, these undisputed facts tend to show that (a) Defendant contemplated (and warned Plaintiff) in February 2021 that Plaintiff would be terminated in the event of any further performance problems, and (b) Plaintiff thereafter (on May 10 and 11, 2021) had performance problems. These facts tend to show not only that Defendant could convince the jury that Plaintiff had not satisfied this element, but also (and more to the point) that Plaintiff would lack evidence sufficient for a jury to find that Plaintiff had satisfied this element—i.e., would lack sufficient evidence that anything (including any workers' compensation claim) other than his May 10-11 performance problems played a "substantial role" in Defendant's decision to terminate him. So the burden shifts to Plaintiff to show otherwise, and indeed Plaintiff does not argue that the burden did not shift to him.

Instead, construing Plaintiff's Response to Motion in the most favorable light,[13] Plaintiff attempts to show that he can carry that burden by listing various enumerated paragraphs (of one or more sentences) stating alleged facts with purportedly supporting citations. With respect to this

_____

[13] This construction is generous to Plaintiff. The Response to Motion actually does not make much (if any) effort to present a reasoned argument as to why, under applicable law, the enumerated points suggest that he could reach a jury on this fourth element. The Response to Motion is notably devoid of what the Court would call a narrative explanation—of the kind generally found (and expected to be found) in this kind of briefing—for why the Court should decide the Motion in Plaintiff's favor.

fourth element of a claim of TWCL retaliation, there is a list of 26 enumerated paragraphs, then one separate additional paragraph, from which initially it would appear that the Court at least conceivably could find facts helpful to Plaintiff (Doc. No. 25-1 at 4-9, 11). But having reviewed all 27 of these paragraphs, the Court does not see a single alleged fact that would support a claim that Plaintiff was terminated because he had made a workers' compensation claim.

As noted above, Plaintiff ultimately asserts that he was terminated because, at the time of termination, he was unable to perform his job. (Doc. No. 25-1 at 11-12). But this assertion, even if true, does not aid Plaintiff in establishing the fourth element. Notably absent here is any claim that a co-cause of his termination was his having made a workers' compensation claim; that is, in asserting that he was terminated because he was unable to perform the job (a concession that is devastating to Plaintiff's ability to satisfy the first element of his claim of discrimination in violation of the TDA, as noted above), Plaintiff does not also assert that he was terminated at least in part because he made a workers' compensation claim. This makes the Court wonder why Plaintiff ever contended that he had a valid claim of TWCL retaliation. The reason must be, as best the Court can tell, that Plaintiff thinks it is enough that he prove that he was terminated because he became unable to perform his job due to an injury for which Defendant should have arranged timely treatment but did not. Any such thought is misguided; even assuming both that Plaintiff could prove this and that this could be problematic for Defendant in some way, it would not help Plaintiff prove his claim of *TWCL retaliation* (or of discrimination in violation of the TDA, for that matter).

Relatedly, Plaintiff suggests that it is enough that he demonstrate Defendant's "animus and retaliatory attitude." (*Id.* at 12). Again, he is mistaken because not just *any* animus and retaliatory attitude will suffice; for his claim of TDA discrimination, the animus must be based on a disability,

and for his claim of retaliation, the retaliatory attitude must spring from conduct protected either (depending on the statute invoked) by the TWCL or the TDA.

In short, Plaintiff has failed to raise a genuine issue as to the fourth element of (an indirect-evidence prima facie case of) TWCL retaliation. So Defendant is entitled to summary judgment on that claim.

III.     Plaintiff has not brought a claim of TPPA retaliation.

Defendant apparently reads Plaintiff's Complaint to include a claim of retaliation in violation of the TPPA. This is understandable. After all, even though the TTPA is not otherwise mentioned, the Complaint says at the outset that "Plaintiff brings this action for damages and all available relief under Tenn. Code Ann. § 50-1-304," which is the TPPA. (Doc. No. 1-1 at 3). Thus, Defendant challenged such a claim via the Motion, and the Court is entirely clear why Defendant (justifiably) did so. For reasons the Court does not understand, Plaintiff opines that "it is unclear to the Plaintiff why [such a claim] is addressed in Defendant's brief." (Doc. No. 25-1 at 11). More to the point, and more helpfully, Plaintiff states that he did not file such a claim. (*Id.*). It is clear that any such claim, had one ever been brought, has been abandoned. But the Court, choosing to credit Plaintiff's characterization of the Complaint because Plaintiff is "the master of his own Complaint and he is entitled to assert whichever rights he wishes to assert" and not assert any rights he wishes not to assert, *Montgomery v. Jones*, 355 F. Supp. 3d 720, 727 (M.D. Tenn. 2019), treats the TPPA claim as never having been brought. So there is no TPPA claim as to which summary judgment could be either granted or denied.

IV.     Plaintiff has not brought a claim of TDA retaliation.

Just as Plaintiff did not actually bring a claim of TPPA retaliation despite having indicated briefly in the Complaint that he was bringing such a claim, so also Plaintiff did not actually bring

a claim of TDA retaliation despite having indicated briefly in the Complaint that he was bringing such a claim. The indication of a TDA retaliation claim was as follows:

C.     <strong><u>Retaliatory Discharge Under TDA</u></strong>

30.     Plaintiff repeats and incorporates by reference the facts and allegations contained in paragraphs 1-29 hereinabove.

31.     After sustaining injuries on-the-job, Plaintiff was disabled and unable to work but was coerced into doing so.

32.     Accordingly, Defendant was prohibited in [sic] TDA from discriminating against and discharging the Plaintiff as a result of his injury and disability.

34. [sic] As a result of the unlawful acts of the Defendant, Plaintiff has suffered the loss of his employment and is entitled to recover actual damages, punitive damages, attorney fees, costs, and other compensation and relief permitted by applicable law.

(Doc. No. 1-1 at 7-8).

Setting aside the caption of this section of the Complaint, and focusing instead on the section's substance as set forth in the four paragraphs below the caption, the claim is one alleging that Plaintiff was "discriminat[ed] against and discharg[ed] . . . as a result of his injury and disability." (*Id*. at 8). But this is merely a rehash of the TDA discrimination claim; the paragraphs allege termination based on Plaintiff's *disability*. Contrary to its caption, this section does not set forth a claim of "[r]etaliatory [d]ischarge [in violation of] TDA"; as explained below, such a claim is a claim that the plaintiff suffered termination (or some other materially adverse action) as the result of having engaged in *protected activity*.

"The statutory basis for TDA retaliation causes of action is through the THRA." *Chapman v. Olymbec USA, LLC*, No. 2:18-CV-02842, 2020 WL 1976829, at *3 n.2 (W.D. Tenn. Apr. 24, 2020) (citing *Baker v. Windsor Republic Doors*, 414 F. App'x 764, 779 (6th Cir. 2011) (citing Tenn. Code Ann. § 8–50–103(b)(2))). And as for the THRA:

> [It] prohibits retaliation against employees who oppose discriminatory practices in the workplace. *Ferguson,* 451 S.W.3d at 384. As relevant here, the Act provides that it is a "discriminatory practice" to retaliate or discriminate in any manner against a person because the person has made a charge, filed a complaint, or participated in any manner in any investigation, proceeding or hearing under the Act. Tenn. Code Ann. § 4–21–301(a)(1). A claimant must prove the following four elements to prevail on a retaliation claim under the THRA:
>
> > (1) that [the plaintiff] engaged in activity protected by the THRA;
> >
> > (2) that the exercise of [the plaintiff's] protected rights was known to the defendant;
> >
> > (3) that the defendant thereafter took a materially adverse action against [the plaintiff]; and
> >
> > (4) there was a causal connection between the protected activity and the materially adverse action.
>
> *Sykes v. Chattanooga Hous. Auth*., 343 S.W.3d 18, 29 (Tenn. 2011) (quoting *Allen v. McPhee*, 240 S.W.3d 803, 820 (Tenn. 2007), *abrogated on other grounds by Gossett*[, 320 S.W.3d at 783–84].

*Goree v. United Parcel Serv., Inc.*, 490 S.W.3d 413, 434 (Tenn. Ct. App. 2015) (footnote omitted). A claim of TDA retaliation, therefore, requires (and is *fundamentally about*) protected activity. And Plaintiff here alleges no protected activity. For purposes of this requirement, a person has engaged in protected activity if the person has "opposed a practice declared discriminatory by this chapter or . . . has made a charge, filed a complaint, testified, assisted or participated in any manner in any investigation, proceeding or hearing under [the THRA]." Tenn. Code Ann. § 4-21-301(a)(1). Under this definition, to suffer an injury and to thereby become a person with a disability—which

is the only event alleged in paragraphs 30-34 that even conceivably could be taken as an allegation of Plaintiff engaging in protected activity—simply is *not* to engage in protected conduct.

The situation regarding Plaintiff's ostensible TDA retaliation claim is reminiscent of *Brown v. Delek U.S. Holdings, Inc.*, No. 3:09-0179, 2009 WL 4884442 (M.D. Tenn. Dec. 10, 2009), wherein the district judge adopted a magistrate judge's report and recommendation that stated as follows in recommending dismissal of retaliation claims under the THRA:

> In his opposition to Defendants' Motion for Partial Judgment on the Pleadings, the Plaintiff seems to confuse retaliation with discrimination. Plaintiff essentially repeats his argument that Defendant Berry was motivated by Plaintiff's race in opposing an award of unemployment benefits. Plaintiff has simply not alleged that he engaged in a protected activity under the THRA. The Magistrate Judge believes Plaintiff's claims for retaliation under the THRA should be dismissed.

*Id.* at *4 (citation and footnote omitted). Likewise, in paragraphs 30-34 of the Complaint, Plaintiff at best essentially alleges what he alleges elsewhere: that Defendant was motivated to terminate him by his being in a protected class, i.e., a person with a disability. In these paragraphs (unlike elsewhere, where he *does* allege that he engaged in protected conduct, namely making a workers' compensation claim, for purposes of a claim of TWCL retaliation), he does not allege that he engaged in protected activity. So just as the plaintiff in *Brown* did not adequately allege a claim of THRA retaliation, Plaintiff here should not be taken to have even asserted a claim of TDA retaliation in the first place.

Moreover, neither Defendant nor (even more tellingly) Plaintiff make in their respective motion papers any mention of a claim of TDA retaliation. The Court sees no reason to believe that Plaintiff even intended to bring a claim of TDA retaliation despite having a few-word caption indicating otherwise, just as Plaintiff has made clear that he did not intend to bring a claim under the TPPA despite indicating in the Complaint that he was bringing such a claim.

Thus, the Court treats the claim as never having been brought. So there is no TDA retaliation claim as to which summary judgment could be either granted or denied.

<u>CONCLUSION</u>

It is apparent that Plaintiff actually asserted two (and only two) claims in his Complaint. As to these two claims, discrimination in violation of the TDA and retaliation in violation of the TWCL, there is no genuine issue as to any material fact, and based on the undisputed facts, Defendant is entitled to judgment as a matter of law. Accordingly, Defendant is entitled to summary judgment as to all claims in the Complaint.

An appropriate corresponding order will be entered.

IT IS SO ORDERED.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT COURT